E-FILED
Friday, 17 June, 2011 12:35:28 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Rick L. Holland, | ) | |
|         Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 09-4001 |
| | ) | |
| Pat Richter, Richard Carlson, and City of Rock Island, Illinois, | ) ) | |
|         Defendants | ) | |

## ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is the motion for summary judgment (#27) by Plaintiff as to Counts I and II of the Complaint, and the cross motion for summary judgment by Richter and Carlson (#31). The City of Rock Island has adopted (#32) the cross motion as well as the response and reply filed by Richter and Carlson. The motions are granted in part and denied in part as stated herein.

### JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this dispute pursuant to 18 U.S.C. 1331, because the suit alleges violations of the United States Constitution and is brought pursuant to 42 U.S.C. 1983..

Venue is proper in this Court pursuant to 18 U.S.C. 1391(b), because all of the events giving rise to the claims occurred within Rock Island County, Illinois, which is within the Rock Island Division of the Central District of Illinois.

1

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v.

S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999).

**UNDISPUTED FACTS**

The following facts are taken from the parties' statements of fact and the responses and replies thereto, as well as from the evidence they have submitted in support or in opposition.

One Saturday in September of 2007, a theft complaint was lodged at the Rock Island Police Department. The location of the theft was at Apartment 4 at 723 20th Street in Rock Island, where one Tom Jones resided. He reported that a friend of his, Thomas Felton, had stolen his air conditioner and had hit him in the face.

Police officer Pat Richter responded to that complaint. Richter spoke with Jones, who ultimately told Richter he did not want to press charges but he did want his air conditioner back. Richter could see that Felton was sitting on the air conditioner on a balcony outside of the apartment next door. He could also determine, after he spoke with Felton, that Felton was intoxicated. Richter also talked to a Sean Cook, who was in Jones' apartment and had witnessed the incident. He confirmed that Felton had tried to hit Jones and provided some other details. Richter ran Cook's name via radio and learned that there was an arrest warrant outstanding for Cook. Richter cuffed and arrested Cook. He called for assistance, since someone would have to take custody of Cook while he continued his investigation of the theft incident. Two officers responded, one of them defendant Richard Carlson. The second officer took control of Cook; Carlson remained to assist Richter.

In addition to speaking to Jones, Felton and Cook, Officer Richter also interviewed Debra Hawkins, an African American woman who lived with plaintiff Rick Holland in apartment

3

5, next door to Jones' apartment. At the time of the interview, Holland, an African American man, was not at home; he had been at a barbeque at his parent's house and was on his way home. When he arrived, he walked upstairs carrying a pan of leftovers from the barbeque. In order to get to his apartment, it was necessary for him to walk past Apartment 4. He noticed the commotion - there were already 5 to 7 people present in addition to police officers in front of apartments 4 and 5 - and he observed a guy sitting on an air conditioner in front of his door.

Holland testified that he was unable to open the door to his apartment because of the location where Felton was sitting on the air conditioner. He stated that he asked Felton to move, but Felton "indicated" that the officer had told him to remain where he was. How Holland eventually was able to enter his apartment is not explained.

Richter does not recall seeing Holland arrive in the area. The first time he saw Holland, he was standing somewhere near his front door. Richter testified that, at that time, Holland was yelling at the officers, at Debra Hawkins, and at the others who were present. Holland disputes this, asserting that he said nothing as he approached his apartment but that Richter came up to him and yelled at him to get in his apartment or he would be taken to jail. Richter denies this.

Whether Holland was inside his own apartment at that time is disputed, but all parties agree that he was not near or trying to come near Apartment 4. Richter told Holland to stop yelling and go inside his apartment, because the officers were there on an investigation. Initially Holland kept yelling but after a short time, he did go back into his own apartment. He did not shut the door, however; he continued to yell from the doorway of the apartment. It is not entirely clear if he ever came out of the apartment, but if he did, even the officers agree that he made no moves toward them. He may - or may not - have taken a few steps toward the neighboring

apartment, but no one perceived those steps as being "directed towards" the officers. No one testified that Holland at any point made any physical movement that was interpreted as threatening.

Carlson described the scene in his Case Supplemental Report (Doc. #27, Exhibit 6), which states *verbatim*:

> Holland and Hawkin's behavior was visibly impeding Officer Richter's ability to conduct a thorough investigation. I initially assisted by requesting that the two white male subjects leave the immediate area. Both agreed and left, however, Holland and Hawkins continued to stand on the balcony and yell and scream at Officer Richter.
>
> Officer Richter, in response to Holland's obstructive behavior requested several times that Holland go inside his apartment, stating 'I am trying to conduct an investigation of a theft, go inside your apartment.' Holland would not listen at first, but after Officer Richter approached him and advised him that he would be placed under arrest for obstructing a peace officer, Holland stepped inside his apartment. As I was walking toward Officer Richter's location outside of apartment 5, I heard Holland state several times, 'you wouldn't be telling me to get inside if you didn't have that pistol.' Holland also stated, 'you wouldn't be telling me to get inside if you didn't have that uniform.'
>
> Holland was standing with his door ajar with one foot outside his apartment while he was shouting these comments in the direction of Officer Richter and myself. Holland's body language indicated he was extremely agitated with the situation and our attempts to calm Holland only seemed to agitate him more. Finally, Officer Richter was able to get Holland to go back inside his apartment and I stayed just outside to prevent Holland from creating another disturbance. It should be noted, when Holland went back into his apartment, Hawkins sat down in a chair outside Apartment 5 and was no longer obstructed to our investigation.

At some point, Holland opened the door from his apartment and began to yell at the officers again. At that point, as he was standing on or at the threshold of the apartment and about five feet away from the nearest officer, he was handcuffed and placed under arrest. Holland testified that both officers entered his apartment, a fact that they both deny. Then Holland asserts that Carlson grabbed his arm with such force that his arm "went straight up in the air, and my

5

forehead almost hit my knee. I went straight down, and I wasn't resisting arrest or anything." He was charged with resisting-obstructing a police officer. The case was dismissed in June.

About six weeks after these events, Officer Carlson submitted Interoffice Correspondence (Doc.#27, Exhibit 7), adding to his initial report another statement that had been made by Richter and the response it had provoked, neither of which had been mentioned in either of the officers' original reports. Carlson added the following information:

> In addition to the above information, I recall Rick Holland and Debra Hawkins becoming very upset with Officer Richter and myself after Officer Richter made the statement 'you're acting like animals.' ... Immediately after Officer Richter made the aforementioned comment, both Hawkins and Holland began screaming that Officer Richter had just called them "fucking niggers."

There is no dispute that Richter had used the word "animals" in a comment he made to the group of people assembled outside the apartments, which at the time included Holland and Hawkins. The dispute primarily involves what exactly was said. Contrary to Carlson's recollection, Holland testified that he heard Richter say "dumb fucking animals." As a result, there is a dispute about how Richter intended the comment versus how Holland and Hawkins perceived it. According to Richter, he was commenting about the behavior of the group of people; according to Holland, the comment was the equivalent of a racial epithet. Everyone agrees that, after the comment, both Holland and Hawkins became upset. Richter was reprimanded for his comment.

Rick Holland then filed this lawsuit. His complaint contains the following claims. In Count I, he alleges false arrest against Officers Richter and Carlson, in violation of the Fourth Amendment. In Count III, he alleges malicious prosecution against the Officers in violation of the Fourth Amendment. In Count V, he asserts an unreasonable search and seizure by the

officers in violation of the Fourth Amendment. In Count VII, he alleges violation of 42 U.S.C. 1981 for disparate treatment under the law, based on race. In Counts II, IV, VI, and VIII he alleges that the City is obligated to indemnify the officers for any judgment against them.

## THE SUMMARY JUDGMENT MOTIONS

Both parties have moved for summary judgment as to some of these counts. Plaintiff has moved for judgment in his favor as to liability on the False Arrest claims in Counts I and II. Defendants have moved for summary judgment as to the False Arrest claims in Counts I and II, as well as on the Malicious Prosecution claims in Counts III and IV, the Unreasonable Seizure claims in Counts V and VI, and the Equal Protection/Disparate Treatment claims in Counts VII and VIII.

### *FALSE ARREST*

Plaintiff asserts first that the law is clear that an arrest for obstruction of a peace officer or resisting arrest must be based on a physical act. According to Plaintiff, all parties agree that Holland committed no physical act; he merely argued with the officers. Defendants point out that Illinois law is not quite that clear, so they are entitled to qualified immunity. Defendants argue in the alternative that, even if the law was clear, Holland's conduct went beyond mere argument and involved physical acts that impeded the investigation.

Under Illinois law, (720 ILCS 5/31-1) it is unlawful to resist or obstruct performance by one known to be a peace officer. Payne v. Pauley, 337 F.3d 767, 776 (7th Cir. 2003), citing 720 ILCS 5/31-1. It is well settled the resistance or obstruction must be physical; mere argument will not suffice. Payne, 337 F.3d at 776, citing People v. Weathington, 411 N.E.2d 862, 863-64 (Ill.1980); People v. Raby, 240 N.E.2d 595, 599 (Ill.1968); People v. Long, 738 N.E.2d 216, 222

7

(Ill.App.2000); People v. Martinez, 717 N.E.2d 535, 538 (Ill.App.1999); People v. Hilgenberg, 585 N.E.2d 180, 183 (Ill.App.1991). See also, Ryan v. County of DuPage, 45 F.3d 1090, 1093 (7th Cir.1995)(collecting cases).

As the Payne Court noted, the First Amendment protects even profanity-laden speech directed at police officers. 337 F.3d at 776, citing City of Houston v. Hill, 482 U.S. 451, 461 (1987). Police officers reasonably may be expected to exercise a higher degree of restraint than the average citizen and should be less likely to be provoked into misbehavior by such speech. Id. at 462. Payne itself is instructive. The District Court entered summary judgment in favor of a police officer, concluding that the plaintiff had engaged in obscenity-laced argument with the officer, incited the crowd, refused to follow the officer's instructions by trying to get into the squad car with her arrested son and by trying to move her son's vehicle after being instructed not to. The Seventh Circuit reversed, finding that the District Court had failed to view the facts in the light most favorable to the plaintiff, who had denied each of those facts and had asserted that she neither shouted nor swore; did not try to talk to her son once he was in the squad car, did not disobey any order about moving the vehicle and did not resist arrest or incite the crowd. 337 F.3d at 776. The Seventh Circuit specifically discussed the plaintiff's assertion that she had "defended herself using her free speech rights." While the District Court construed that statement as an admission that she had argued with the officer, another interpretation - the plaintiff's - was plausible. Moreover, even if she had done what the District Court found she did, "it is well established under Illinois law that mere argument with a police officer does not constitute obstruction." 337 F.3d at 776 n.4.     Most cases that address this question treat the law as creating a clearly defined dichotomy between "mere argument" and "physical act." Unless an

8

active physical resistance, usually involving contact between the officer and an arrestee, was present, no violation of the statute will be found to have occurred. See, e.g., People v. Hilgenberg, 585 N.E.2d 180, 183 (Ill.App.1991); People v. Ramirez, 502 N.E.2d 1237, 1239-40 (Ill.App.1986).

There is an indication in some cases, however, that the "physical" element that is required under the statute might not necessarily need to rise to the level of active struggle or contact with a police officer. In Weathington, the State's Supreme Court declined to decide "whether an activity falling between mere argument and a physical act" could constitute a violation of the statute. 411 N.E.2d at 864. In Raby, the Supreme Court stated that the terms of the statute "do not proscribe mere argument with a policeman about an arrest or other police action but proscribe only some physical act which imposes *an obstacle which may impede, hinder, interrupt, prevent or delay* the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." 240 N.E.2d at 599.

From those two statements, a number of lower courts have found that conduct falling short of physical resistance to or physical contact with a police officer nonetheless suffices to show obstruction. For example, in People v. Gibbs, 253 N.E.2d 117 (Ill.App.1969), the police were conducting a search of 10-12 teenage boys. Defendant came out of a nearby office, announced that the police were violating the boys' rights, and informed the boys that they could come into the office where the police would need a warrant to enter. When he went back into the office, many of the boys followed him. Because of the number of people already inside, the police were unable to complete the search and arrest. The defendant was warned that he was

interfering with police business and was arrested. The Court found that the defendant's conduct went beyond mere argument with the police and affirmed his conviction for obstruction.

In another case, the brother of a man just arrested removed his jacket, revealing an empty shoulder holster. People v. Connor, 355 N.E.2d 662 (Ill.App.1976). He threatened to kill the officers if they did not release his brother. A witness on the scene restrained him, although he continued to yell threats at the arresting officers. The court found the conduct adequate to support his conviction for violating the statute. See also, People v. Meister, 682 N.E.2d 306 (Ill.App.1997)(defendant intentionally initiated contact with the police in order to provide them with false information about his wife's whereabouts found to be designed to mislead the officers and delay performance of their duties and was therefore sufficient to sustain the conviction); People v. Martinez, 717 N.E.2d 535 (Ill.App.5th dist.1999)(defendant stepped between an officer and the men he was trying to question found to be an act that actually impeded, hindered, interrupted, and delayed the officer's performance of his duties, due to creation of apprehension about security and interruption of questioning).

I believe it to be significant that the statute contains two prohibitions: resistance and obstruction. As the Supreme Court noted in Raby, the two words have different definitions; "to resist" means to withstand the force or effect of, or to exert oneself to counteract or defeat, while "obstruct" means to be or come in the way of. 240 N.E.2d at 599. The two words are not redundant, and the types of acts that fall within the proscription of one need not necessarily fall within the proscription of the other. Compare People v. Stoudt, 555 N.E.2d 825 (Ill.App.1990)(plaintiff's refusal to remove himself from the highway as ordered by an officer does not constitute physical resistance, so there was no violation of the statute) with People v.

Woidtke, 587 N.E.2d 1101 (Ill.App.1992)(defendant's crossing of a yellow police line and failure to stop or to identify himself when so ordered, along with evasiveness upon questioning constituted probable cause for his arrest for obstruction).

The cases discussed above demonstrate - although they certainly do not hold - that certain acts not rising to the level of "exerting oneself" may nonetheless constitute "being in the way of" and hence be sufficient to violate the statute. While I think there is no question that Holland's conduct did not constitute resistance, there remains the question whether it rose to the level of obstruction. Defendants, of course, take the position that what Holland did rose to the level of the physical act required for the statutory violation, while Holland himself of course takes the opposite position. Ordinarily, for purposes of summary judgment, the facts would be construed in favor of the non-movant, making it unnecessary for the Court to actually decide how to characterize the conduct. In this case, however, there are cross motions for summary judgment. Both of the motions depend in significant part on what Holland did. It is simply not necessary to go through the full analysis of each motion, assuming in Holland's motion that he acted as Richter and Carlson described his conduct, and assuming in Richter and Carlson's motion that Holland acted as he described his own conduct. The first assumption would lead to denial of Holland's motion, because if he acted as described by the Officers, his conduct at least created a question of fact whether they reasonably believed he was obstructing their investigation. The second assumption would lead to denial of the Officers' motion, because the law was sufficiently established that mere argument does not constitute either resistance or obstruction, so no qualified immunity attaches to the Officers. Moreover, even if the law was unsettled as to what conduct suffices under the statute, the dispute about Holland's conduct

prevents entry of summary judgment in Defendants' favor on the merits of this claim. Accordingly, Plaintiff's motion, which is limited to the False Arrest Claim in Count I and the corresponding indemnity claim in Count II, is DENIED. To the extent that Defendants' motion attacks the False Arrest claim, it too is DENIED.

## *MALICIOUS PROSECUTION*

Defendants assert that, because they believed they had probable cause to arrest Holland, he is unable to succeed on this claim. No law is cited for that proposition; indeed, with the limited exception discussed below, no law about malicious prosecution is cited in the Defendants' memo. Moreover, as discussed above, whether the Officers had probable cause to arrest Holland is a conclusion that Defendants would have this Court draw from disputed facts. As above, this the Court will not do.

Defendants also assert that a malicious prosecution claim must fail because there is nothing to suggest any improper motive on the Officers' parts. Such an improper motive is an essential element of such a claim, argue the Officers, citing two Illinois appellate court cases that are more than 30 years old and that discuss only the state law tort of malicious prosecution - not the Fourth Amendment claim that is presented in Count II of the Plaintiff's complaint. This argument too fails.

However, it is well settled and, the Court believed, well known, that the Seventh Circuit does not recognize the existence of a federal constitutional claim for malicious prosecution. As was thoroughly discussed in Parish v. City of Chicago, 594 F.3d 551, 552 (7th Cir.2009), an action for malicious prosecution under § 1983 fails as a matter of law if a state remedy exists. See also Newsome v. McCabe, 256 F.3d 747, 751 (7th Cir.2001) (holding that the tort of

malicious prosecution should be analyzed under the procedural due process clause and that the existence of a tort claim under state law "knocks out any constitutional theory of malicious prosecution ... because the due process of law is afforded by the opportunity to pursue a claim in state court ..."); Fox v. Hayes, 600 F.3d 819, 841 (7th Cir.2010) (existence of malicious prosecution claim under state law precludes *any* federal constitutional theory of malicious prosecution under § 1983). And Illinois law provides a state remedy for malicious prosecution. See Swick v. Liautaud, 662 N.E.2d 1238, 1242 (Ill.1996); Mosley v. City of Chicago, 614 F.3d 391, 399 (7th Cir.2010).

Although the point was not asserted in the Defendants' motion, it is evident that this Count fails as a matter of law. Accordingly, the Defendants' motion for summary judgment as to Count III is GRANTED, but for the reasons stated herein. As a result, the indemnification claim contained in Count IV is also deficient as a matter of law, and judgment against the Plaintiff is entered as to that Count as well.

## *UNREASONABLE SEARCH AND SEIZURE*

Defendants assert once again that if they had probable cause to arrest Holland, their seizure of him was not unreasonable as a matter of law. As was thoroughly discussed above, the existence of probable cause cannot be determined from the pleadings because of the dispute about Holland's conduct. Accordingly, the Motion is denied as to Counts V and VI.

## *EQUAL PROTECTION: DISPARATE TREATMENT*

As Defendants state in this part of their motion, a plaintiff pleading a violation of the Equal Protection clause of the Constitution must show that he is a member of a protected class, that he was otherwise similarly situated to members not in a protected class, and that he was

treated differently from those unprotected members. See, Chavez v. Illinois State Police, 251 F.3d 612, 635-36 (7th Cir. 2001).

Holland has asserted that he was similarly situated to Thomas Felton, who is white, because both were cooperative with the police on the scene but that he was arrested and Felton was not. The Officers challenge whether Felton was similarly situated to Holland, characterizing Holland's testimony as "implausible and inconsistent." The Officers proceed from that characterization to the conclusion that they were not similarly situated because Holland was not cooperative. As discussed above, however, Holland's testimony about his own conduct is sufficient to raise questions of fact on that issue. The Court will not determine credibility or implausibility on this record.

Holland's response to the motion on this point goes on at some length in an attempt to persuade the Court that he and Felton were similarly situated. Plaintiff, however, did not move for such a finding, and it is not necessary for the Court to draw that conclusion in order to rule on the motion before it. Moreover, that conclusion depends on disputed testimony in exactly the same way as does the conclusion rejected above. No such finding is intended by this Order.

For the same reasons that summary judgment was denied as to the false arrest claims, it is denied as to the Equal Protection claim. Defendants' motion for summary judgment as to Counts VII and VIII is therefore DENIED.

**CONCLUSION**

As stated herein, the Plaintiff's motion for summary judgment (#27) is DENIED. The Officers' motion for summary judgment (#31) is GRANTED as to Counts III and the City's

adoption of that motion (#32) is GRANTED as to Count IV; these motions are DENIED as to all other counts.

This case remains set for a final pretrial conference on July 13, 2011. The proposed final pretrial order, with all attachments, shall be filed on or before July 11, 2011. Any motions in limine shall be filed on or before July 1, 2011, with responses due on or before July 11, 2011.
ENTERED ON June 17, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE